✓ FILED     ___ ENTERED
___ LOGGED     ___ RECEIVED

10:48 am, Apr 26 2024
AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy



**U.S. Department of Justice**

**Tax Division**
Northern Criminal Enforcement Section
P.O. Box 972
Washington, D.C. 20044

DAH:JHP:CMCoppler
DJ 5-35-12878
CMN 2023200197

April 26, 2024

*Via Email*

Michael March, Esq.
Frost Law
michael.march@frosttaxlaw.com

      Re:    Michelle Leach-Bard

Dear Counsel:

      This letter, together with the attachments and Sealed Supplement, confirms the amended plea agreement (hereinafter, "Agreement") which has been offered to Michelle Leach-Bard, ("defendant") by the Department of Justice's Tax Division and the United States Attorney's Office for the District of Maryland ("this Office"). If the defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by **5:00 p.m. on April 26, 2024**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

      1.    The defendant agrees to waive indictment and plead guilty to a two-count criminal information charging her with: Count One, Willful Failure to Account For and Pay Over Tax, in violation of Title 26, United States Code, Section 7202; and Count Two, Theft or Embezzlement from Employee Benefit Plan, in violation of Title 18, United States Code, Section 664. The defendant admits that she is, in fact, guilty of this offense and will so advise the Court.

- 2 -

## Elements of the Offense

2.      The elements of the offenses to which the defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.    *26 U.S.C. § 7202*: That on or about the time alleged in the Information, in the District of Maryland (1) the defendant had a duty to collect, account for, and pay over a tax; (2) she failed to collect, truthfully account for, or pay over the tax; and (3) she acted willfully.

        b.    *18 U.S.C. § 664*: That on or about the time alleged in the Information, in the District of Maryland, the defendant (1) stole or embezzled funds (2) from an employee welfare benefit plan or employee pension benefit plan and (3) acted knowingly and willfully.

## Penalties

3.      The maximum penalties provided for Count One of the Information are as follows: five years of imprisonment and a fine of up to $250,000, or twice the gross pecuniary gain or gross pecuniary loss, and the cost of prosecution.

4.      The maximum penalties provided for Count Two of the Information are as follows: five years imprisonment, and a fine of $250,000, or twice the value of the property involved in the transaction.

5.      In addition, the defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.

6.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion in designating the institution at which it will be served.

7.      Supervised Release: The maximum term of supervised release is three years. If the Court orders a term of supervised release, and the defendant violates the conditions of supervised release, the Court may order the defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

8.      Restitution: The Court may order the defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

9.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise pursuant to 18 U.S.C. § 3572(d). The defendant may be required to pay interest if the fine is not paid when due.

10.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the defendant agrees that: (1) the full amount of the fine or restitution is

- 3 -

nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the defendant agrees to disclose all assets in which the defendant has any interest or over which the defendant exercises direct or indirect control. Until the money judgment is satisfied, the defendant authorizes this Office to obtain a credit report in order to evaluate the defendant's ability to pay, and to request and review the defendant's federal and state income tax returns. The defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

11.  The defendant understands that by entering into this Agreement she surrenders certain rights as outlined below:

   a.  If the defendant had pled not guilty and persisted in that plea, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the defendant, the Government, and the Court all agreed.

   b.  If the defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the defendant could be found guilty of any count. The jury would be instructed that the defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.  If the defendant went to trial, the Government would have the burden of proving the defendant guilty beyond a reasonable doubt. The defendant would have the right to confront and cross-examine the Government's witnesses. The defendant would not have to present any defense witnesses or evidence whatsoever. If the defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

   d.  The defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to

          testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

    e.    If the defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.    By pleading guilty, the defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

    g.    If the Court accepts the defendant's plea of guilty, the defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind, and the Court will find the defendant guilty.

    h.    By pleading guilty, the defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

    12.    The defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.) The defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

- 5 -

### Factual and Advisory Guidelines Stipulation

13. This Office and the defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A which is incorporated by reference herein. This Office and the defendant further agree that:

    a. The total tax loss, including all relevant conduct, for Count One of the Information is $2,663,264.12.

    b. The total fraud loss, including all relevant conduct, for Count Two of the Information is $225,930.78.

    c. Counts One and Two of the Information should be grouped pursuant to the United States Sentencing Guidelines ("USSG") § 3D1.2.

    d. The applicable total offense level under USSG § 2T1.6 is **22**.

    e. This Office does not oppose a **2**-level reduction in the defendant's adjusted offense level pursuant to USSG § 3E1.1(a), based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to USSG § 3E1.1(b) for an additional **1**-level decrease in recognition of the defendant's timely notification of the defendant's intention to enter a plea of guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If the defendant obtains a 3-level reduction, the adjusted offense level thus is **19.**

14. There is no agreement as to the defendant's criminal history and the defendant understands that her criminal history could alter her offense level. Specifically, the defendant understands that her criminal history could alter the final offense level if the defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income. If it is determined that the defendant is a "zero-point" offender pursuant to USSG § 4C1.1, this Office will not oppose an additional **2**-level decrease in her offense level.

15. This Office and the defendant agree that with respect to the calculation of criminal history and the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

- 6 -

## Obligations of the Parties

16.  At the time of sentencing, this Office and the defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the defendant reserve the right to bring to the Court's attention all information with respect to the defendant's background, character, and conduct that this Office or the defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information.

## Waiver of Appeal

17.  In exchange for the concessions made by this Office and the defendant in this Agreement, this Office and the defendant waive their rights to appeal as follows:

    a.    The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the defendant's conviction on the ground that the statute(s) to which the defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b.    The defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i.    The defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the top of the final advisory guidelines range as calculated by the Court at sentencing; and

        ii.    This Office reserves the right to appeal any term of imprisonment to the extent that it is less than the bottom of the final advisory guidelines range as calculated by the Court at sentencing.

    c.    The defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned

- 7 -

matter and agrees not to file any request for documents from the Government or any investigating agency.

d. The defendant agrees that with respect to any and all dismissed charges she is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617. P.L. 105-119 (Nov 26, 1997), and will not file any claim under that law.

### Defendant's Conduct Prior to Sentencing and Breach

18. Between now and the date of the sentencing, the defendant will not engage in conduct that constitutes obstruction of justice under USSG § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; will not move to withdraw from the plea of guilty or from this Agreement; and will not participate, in any way, in the business of preparing and filing tax returns, with the exception of tax returns for the defendant or for any corporations owned by the defendant.

19. If the defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement; and (iii) in any criminal or civil proceeding, this Office will be free to use against the defendant all statements made by the defendant and any of the information or materials provided by the defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the defendant to withdraw the guilty plea. The defendant acknowledges that the defendant may not withdraw the defendant's guilty plea if the Court finds that the defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein.

### Restitution

20. *With Respect to Count 1*: The defendant agrees to pay restitution to the IRS in the amount of **$2,663,264.12**, plus Title 26 interest calculated through the date of sentencing. This Office will provide an updated restitution calculation at the time of sentencing. The pre-interest restitution computation is broken down as follows:

| Quarter | Employment Taxes Due and Owing |
|---|---|
| 4th Quarter 2013 | $36,580.02[1] |
| 1st Quarter 2014 | $78,343.87 |
| 2nd Quarter 2014 | $78,343.87 |
| 3rd Quarter 2014 | $78,343.87 |
| 4th Quarter 2014 | $78,343.87 |
| 1st Quarter 2015 | $87,405.68 |
| 2nd Quarter 2015 | $87,405.68 |
| 3rd Quarter 2015 | $87,405.68 |
| 4th Quarter 2015 | $87,405.68 |
| 1st Quarter 2016 | $93,765.91 |
| 2nd Quarter 2016 | $93,765.91 |
| 3rd Quarter 2016 | $93,765.91 |
| 4th Quarter 2016 | $107,056.23 |
| 1st Quarter 2017 | $97,060.11 |
| 2nd Quarter 2017 | $97,060.11 |
| 3rd Quarter 2017 | $97,060.11 |
| 4th Quarter 2017 | $97,060.11 |
| 1st Quarter 2018 | $83,096.95 |
| 2nd Quarter 2018 | $83,096.95 |
| 3rd Quarter 2018 | $83,096.95 |
| 4th Quarter 2018 | $83,096.95 |
| 1st Quarter 2019 | $72,924.53 |
| 2nd Quarter 2019 | $72,924.53 |
| 3rd Quarter 2019 | $72,924.53 |
| 4th Quarter 2019 | $72,924.53 |
| 1st Quarter 2020 | $75,190.32 |
| 2nd Quarter 2020 | $75,190.32 |
| 3rd Quarter 2020 | $75,190.32 |
| 4th Quarter 2020 | $75,190.32 |
| 1st Quarter 2021 | $78,975.66 |
| 2nd Quarter 2021 | $67,172.82 |
| 3rd Quarter 2021 | $64,059.35 |
| 4th Quarter 2021 | $52,036.47 |
| **TOTAL:** | **$2,663,264.12** |

---

[1] This takes into account a $33,155.58 payment made in 2013.

- 9 -

    a.    The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of the restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

    b.    The defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those civil tax liabilities due and owing for the same periods for which restitution was ordered.

    c.    The defendant understands and agrees that the Agreement does not resolve the defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from the defendant relating to the conduct covered by this Agreement and for conduct relating to any other time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise the defendant's obligation to pay any remaining civil tax liability. The defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

    d.    The defendant understands that she is not entitled to credit with the IRS for any payment until the payment is received by the IRS. If full payment cannot be made immediately, the defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provide to the probation office. The defendant also agrees to provide the above-described information to the probation office.

    e.    The defendant agrees that she will sign IRS Form 870, Form 2504, or other appropriate form enabling the IRS to make an immediate assessment of the liability underlying the restitution agreed to above. The defendant agrees that she will not claim a refund of the payment or otherwise challenge the existence or amount of the tax liability underlying the restitution agreed to above. If the amount of restitution identified above has not already been reduced to account for any such payments, the government agrees that the amount of the restitution to be ordered by the Court shall be reduced by a payment made in conformity with this provision.

    21.    *With respect to Count 2*: The defendant agrees to the entry of a restitution order for **$207,180.41**, which constitutes the full amount of the victims' losses. Pursuant to 18 U.S.C. § 3663A(c)(2), the defendant agrees that an offense listed in § 3663A(c)(1) gave rise to this

- 10 -

Agreement and as such, victims of the conduct described in the charging instrument, statement of facts, or any other related or similar conduct shall be entitled to restitution.

22. The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

23. If the defendant makes a payment of the restitution agreed to above prior to sentencing, the payment will be applied as a credit against the restitution ordered pursuant to paragraphs 20 and 21.

24. The defendant agrees to send all payments made to the Court's restitution order to the Clerk of the Court at the following address:

> United States District Court for the District of Maryland
> Clerk's Office
> 101 West Lombard Street
> Baltimore, MD 21201

With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the defendant will provide the following information:

A. The defendant's name and Social Security Number;

B. The District Court and the docket number assigned to this case;

C. A statement that the payment is being submitted pursuant to the District Court's restitution order.

25. With respect to the restitution to be paid to the IRS, the defendant agrees to include a request that the Clerk of Court send the information, along with defendant's payments, to the IRS address below:

> IRS-RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

The defendant also agrees to send a notice of any payments made pursuant to this agreement including the information listed in paragraph 24, along with the tax years for which restitution has been ordered, to the IRS at the following address:

IRS-RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

### Tax Liability

26. The defendant understands that this Agreement does not resolve any civil tax liability that the defendant may have, and that this Agreement is with the Department of Justice's Tax Division and the United States Attorney's Office, not with the Internal Revenue Service ("IRS"). The IRS is not a party to this Agreement and remains free to pursue any and all lawful remedies it may have. The defendant agrees, however, as a special condition of supervised release: (a) to cooperate fully with the IRS to file delinquent or amended returns, including Forms 1040, 941, and 940, or other documents acceptable to the IRS for the tax years 2013-2021; and (b) to provide a complete and accurate financial statement, under penalty of perjury, to the United States that shall identify all assets valued at $1,000 or more owned or held directly or indirectly by the defendant, as well as all such assets transferred by the defendant to any third parties since 2013, including the location of said assets and identities of the third parties.

### Court Not a Party

27. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive. The defendant agrees that no one has made such a binding prediction or promise.

- 12 -

## Entire Agreement

28.     This letter supersedes any prior understandings, promises, or conditions between this Office and the defendant and, together with the attachments, Sealed Supplement, constitutes the complete plea agreement in this case. The defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

29.     If the defendant fully accepts each and every term and condition of this agreement, please sign and have the defendant sign the original and return it promptly.

Very truly yours,

David A. Hubbert
Deputy Assistant Attorney General
Department of Justice, Tax Division

Jeffrey McLellan
Catriona M. Coppler
Trial Attorneys
Department of Justice, Tax Division

- 13 -

**Defendant's Signature**: I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4/26/24
Date

_____
Michelle A. Leach-Bard


**Defense Counsel Signature**: I am Michelle Leach-Bard's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this Agreement is informed and voluntary.

4/26/24
Date

_____
Michael March, Esq.

## ATTACHMENT A
## STATEMENT OF FACTS: MICHELLE LEACH-BARD

*The United States and the defendant agree that if this case proceeded to trial, the United States would prove the following facts below beyond a reasonable doubt. The parties agree that these are not all the facts that would have been proved if this case proceeded to trial.*

Defendant Michelle Leach-Bard ("defendant") was a resident of Maryland and owner of iProcess Online, Inc. ("iProcess"), a third-party accounting company located in Baltimore, Maryland that specialized in payroll, human resources, and bookkeeping. From at least October 2016 through the end of 2021, the defendant was the sole corporate officer of iProcess. In this position, the defendant was responsible for iProcess' tax return preparation, bookkeeping, payroll, and administrative functions. She was also the signer on iProcess' corporate bank account and was responsible for hiring and firing employees.

During this period, the iProcess had approximately between fifteen to twenty employees. The defendant withheld the federal income, Social Security, and Medicare taxes (collectively "trust fund taxes") from the taxable wages of iProcess employees. She did not, however, file Employer's Quarterly Federal Tax Returns, Forms 941, nor did she pay over the trust fund taxes that she withheld.

On or about the dates listed below, the defendant willfully failed to account for and pay over the trust funds taxes due to the IRS on behalf of iProcess, in the approximate amounts set forth below:

| Quarter | Filing Due Date | Trust Fund Taxes Due and Owing | Employer Portion Due and Owing | Total Employment Taxes Due and Owing |
|---|---|---|---|---|
| 4th Quarter 2013 | January 31, 2014 | $40,608.97 | $29,126.63 | $36,580.02[2] |
| 1st Quarter 2014 | April 30, 2014 | $54,367.13 | $23,976.74 | $78,343.87 |
| 2nd Quarter 2014 | July 31, 2014 | $54,367.13 | $23,976.74 | $78,343.87 |
| 3rd Quarter 2014 | October 31, 2014 | $54,367.13 | $23,976.74 | $78,343.87 |
| 4th Quarter 2014 | January 31, 2015 | $54,367.13 | $23,976.74 | $78,343.87 |
| 1st Quarter 2015 | April 30, 2015 | $62,631.84 | $24,773.84 | $87,405.68 |
| 2nd Quarter 2015 | July 31, 2015 | $62,631.84 | $24,773.84 | $87,405.68 |
| 3rd Quarter 2015 | October 31, 2015 | $62,631.84 | $24,773.84 | $87,405.68 |
| 4th Quarter 2015 | January 31, 2015 | $62,631.84 | $24,773.84 | $87,405.68 |
| 1st Quarter 2016 | April 30, 2016 | $65,816.73 | $27,949.18 | $93,765.91 |
| 2nd Quarter 2016 | July 31, 2016 | $65,816.73 | $27,949.18 | $93,765.91 |
| 3rd Quarter 2016 | October 31, 2016 | $65,816.73 | $27,949.18 | $93,765.91 |
| 4th Quarter 2016 | January 31, 2017 | $76,786 | $30,270.14 | $107,056.23 |
| 1st Quarter 2017 | April 30, 2017 | $68,118.39 | $28,941.72 | $97,060.11 |

---

[2] This takes into account a $33,155.58 payment made in 2013.

| Quarter | Filing Due Date | Trust Fund Taxes Due and Owing | Employer Portion Due and Owing | Total Employment Taxes Due and Owing |
|---|---|---|---|---|
| 2nd Quarter 2017 | July 31, 2017 | $68,118.39 | $28,941.72 | $97,060.11 |
| 3rd Quarter 2017 | October 31, 2017 | $68,118.39 | $28,941.72 | $97,060.11 |
| 4th Quarter 2017 | January 31, 2018 | $68,118.39 | $28,941.72 | $97,060.11 |
| 1st Quarter 2018 | April 30, 2018 | $56,675.28 | $26,421.67 | $83,096.95 |
| 2nd Quarter 2018 | July 31, 2018 | $56,675.28 | $26,421.67 | $83,096.95 |
| 3rd Quarter 2018 | October 31, 2018 | $56,675.28 | $26,421.67 | $83,096.95 |
| 4th Quarter 2018 | January 31, 2019 | $56,675.28 | $26,421.67 | $83,096.95 |
| 1st Quarter 2019 | April 30, 2019 | $49,099.59 | $23,824.94 | $72,924.53 |
| 2nd Quarter 2019 | July 31, 2019 | $49,099.59 | $23,824.94 | $72,924.53 |
| 3rd Quarter 2019 | October 31, 2019 | $49,099.59 | $23,824.94 | $72,924.53 |
| 4th Quarter 2019 | January 31, 2020 | $49,099.59 | $23,824.94 | $72,924.53 |
| 1st Quarter 2020 | April 30, 2020 | $50,281.40 | $24,908.92 | $75,190.32 |
| 2nd Quarter 2020 | July 31, 2020 | $50,281.40 | $24,908.92 | $75,190.32 |
| 3rd Quarter 2020 | October 31, 2020 | $50,281.40 | $24,908.92 | $75,190.32 |
| 4th Quarter 2020 | January 31, 2021 | $50,281.40 | $24,908.92 | $75,190.32 |
| 1st Quarter 2021 | April 30, 2021 | $52,300.27 | $26,675.39 | $78,975.66 |
| 2nd Quarter 2021 | July 31, 2021 | $44,619.99 | $22,552.83 | $67,172.82 |
| 3rd Quarter 2021 | October 31, 2021 | $41,667.70 | $22,391.65 | $64,059.35 |
| 4th Quarter 2021 | January 31, 2022 | $33,950.77 | $18,085.70 | $52,036.47 |
|  | TOTALS: | $1,852,078.41 | $844,341.20 | **$2,663,264.12** |

In addition, a Section 401(k) Profit Sharing and Retirement Plan ("401(k) Plan") was in effect for the benefit of some iProcess employees. The 401(k) plan was at all relevant times an employee benefit plan subject to Title I of the Employment Retirement Income Security Act of 1974, Title 29, United States Code, section 1001, *et seq.*

The assets of the 401(k) Plan were invested through a trust company ("Asset Custodian"). Contributions were deducted from the paychecks of participating employees. iProcess was required to remit those deductions to the Asset Custodian. The defendant was a fiduciary with respect to the 401(k) Plan, and she exercised discretionary authority and control over the disposition of funds contributed by iProcess employees for the purposes of the 401(k) Plan.

Beginning in or about 2007, iProcess ceased remitting employee contributions to the Asset Custodian, although it continued to withhold those funds from employees' paychecks. During this period, the defendant and iProcess willfully and knowingly failed to pay over the following amounts that were withheld from employees' paychecks:

| Year | Employee 1 | Employee 2 | Employee 3 | Employee 4 | TOTAL |
|---|---|---|---|---|---|
| 2007 | — | — | $159.38 | — | $159.38 |
| 2008 | — | — | $54.89 | — | $54.89 |
| 2009 | — | — | — | — | — |

| Year | Employee 1 | Employee 2 | Employee 3 | Employee 4 | TOTAL |
|---|---|---|---|---|---|
| 2010 | – | – | – | – | – |
| 2011 | – | – | $198.34 | – | $198.34 |
| 2012 | – | – | – | – | – |
| 2013 | $1,273.61 | – | $1,120.08 | – | $2,393.69 |
| 2014 | $4,950.00 | – | $4,443.78 | $2,895.59 | $12,289.37 |
| 2015 | $10,999.92 | $4,588.08 | $8,812.49 | $7,019.20 | $31,419.69 |
| 2016 | $11,288.85 | $4,937.58 | $10,823.20 | $6,717.60 | $33,767.23 |
| 2017 | $10,999.56 | $4,761.61 | $11,375.00 | $5,936.37 | $33,072.54 |
| 2018 | $10,999.56 | $5,732.91 | $11,351.38 | $5,642.96 | $33,726.81 |
| 2019 | $10,999.56 | $6,299.81 | $9,625.00 | $6,159.92 | $33,084.29 |
| 2020 | $10,999.56 | $3,339.64 | – | $3,790.72 | $18,129.92 |
| 2021 | $8,884.26 | – | – | – | $8,884.26 |
| **TOTAL:** | **$81,394.88** | **$29,659.63** | **$57,963.54** | **$38,162.36** | **$207,180.41** |

In addition, from in or around 2012 through in or around 2021, the defendant and iProcess failed to forward approximately $18,740.37 to the Asset Custodian in employer matching contributions for Employees 1, 3, and 4. Thus, in total, the defendant failed to pay over or contribute **$225,930.78**.

SO STIPULATED:

Jeffrey McLellan
Catriona M. Coppler
Trial Attorneys
Department of Justice, Tax Division

Michelle Leach-Bard

Michael March
Counsel for Defendant